**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|                          |   |                                    |
|--------------------------|---|------------------------------------|
| MARTIN A. ARMSTRONG,     | : |                                    |
|                          | : | Civil Action No. 10-4388 (RMB)     |
|            Plaintiff,    | : |                                    |
|                          | : |                                    |
|            v.            | : | **OPINION**                        |
|                          | : |                                    |
| WARDEN DONNA ZICKEFOOSE, | : |                                    |
|                          | : |                                    |
|            Defendant.    | : |                                    |

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Martin A. Armstrong
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

Counsel for Defendant
John Andrew Ruyman
Assistant U.S. Attorney
402 East State Street
Suite 430
Trenton, NJ 08608

**BUMB**, District Judge

Plaintiff Martin A. Armstrong, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, seeks to bring this action alleging violations of his constitutional rights.  For the reasons set forth below, this action will be dismissed without prejudice.

### I.   BACKGROUND

On August 20, 2010, Martin A. Armstrong, the petitioner in <u>Armstrong v. Zickefoose</u>, Civil Action No. 09-6378 (D.N.J.), a matter involving a Petition for Writ of Habeas Corpus, filed a "Motion to be Urgently Taken to Saint Francis Hospital for

Medical Attention," in which he stated that he had been suffering form a Staph infection for approximately one year, that he believed the infection was spreading, that he felt dizzy, and that he sought an order from this Court directing Warden Donna Zickefoose to transport him to a hospital for medical attention.[1]

This Court, noting that the Motion was not directed to the subject matter of the pending habeas petition, construed it as a civil action requesting preliminary injunctive relief. In an Order entered August 26, 2010, this Court severed the Motion from the habeas action, directed the Clerk of the Court to open this new and separate civil action, and ordered the defendant Warden Donna Zickefoose to respond in writing addressing the medical-care claim, to enable this Court to determine whether to enter a further order to show cause why a preliminary injunction should not be issued directing defendant to provide medical care and treatment to Plaintiff.

The Defendant has answered, Plaintiff has responded only with further Motions [8, 9, 15, 16, 17, 18] for various emergency medical relief, appointment of a special master, and enjoining Dr. Abigail LaSalle from attending to him, and this matter is now ready for determination.

---

[1] This Motion was received in this Court on August 24, 2010, but, pursuant to the mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), the Motion is deemed filed as of the date it was placed in the prison mail system, here, on or about August 20, 2010.

II.  <u>ANALYSIS</u>

A.  <u>The "First-Filed" Rule</u>

This Court takes judicial notice[2] of the fact that Plaintiff filed a claim virtually identical to that presented here, as a "Motion ... In the Alternative, to Order the Defendant to Immediately Take Armstrong to Saint Francis Hospital to Receive Urgent Medical Attention to Prevent Him From Going Blind and Suffering Medical Damage by a [Staph] Infection They Refuse to Address," in a pending action in the U.S. District Court for the District of Columbia.  <u>See</u> <u>Armstrong v. Lappin</u>, Civil No. 09-0972 (D.D.C.) (Docket Entry No. 21).  In <u>Armstrong v. Lappin</u>, Plaintiff asserted a civil rights claim against Harley Lappin, Director of the Federal Bureau of Prisons, and various fictitious defendants, arising out of an alleged inmate attack while Plaintiff was confined at the Metropolitan Correction Center in New York; Plaintiff also challenged the calculation of his sentence, seeking credit against his criminal sentence for time spent confined as a civil contemnor.  By Memorandum Opinion and Order [8] entered July 2, 2009, that court ordered the matter

_____

[2] This Court will take judicial notice of the dockets of other federal courts in cases related to this Petition.  <u>See</u> Fed.R.Evid. 201; <u>Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.</u>, 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

transferred to the U.S. District Court for the Southern District of New York;[3] Plaintiff appealed the transfer order by a notice of appeal [12] received in the District Court for the District of Columbia on October 1, 2009.  The referenced motion for medical care, dated August 11, 2010, was filed more than ten months after the notice of appeal was filed.  As of this date, no action has been taken in the District of Columbia on Plaintiff's motion pending in that court, nor has the District of Columbia transferred the motion to the District Court for the Southern District of New York, where all other claims originally asserted in the District of Columbia matter are now pending.

Nevertheless, because a virtually identical claim was filed in the District of Columbia approximately nine days before this claim was filed here, this Court must consider whether, in light of the "first-filed" rule, it is appropriate to decide the issues presented here.[4]

---

[3] The transferred matter is pending in the U.S. District Court for the Southern District of New York as Armstrong v. Lappin, Civil No. 09-7370 (S.D.N.Y.).  The Southern District of New York matter has been placed on the suspense docket in light of Plaintiff's appeal of the transfer order.

[4] The Court recognizes that the action pending in the District of Columbia names a different defendant, Harley Lappin. As Plaintiff seeks identical injunctive relief against officials of the Federal Bureau of Prisons, however, in both actions, the Court does not consider that the difference in the nominal defendant is necessarily dispositive of the "first-filed" issue.

4

In 1941, the Court of Appeals for the Third Circuit adopted what has become known as the "first-filed" rule, in which the Court announced that "'[i]n all cases of [federal] concurrent jurisdiction, the court which first has possession of the subject matter must decide it.'"  Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929-30 (3d Cir. 1941) (quoting Smith v. McIver, 22 U.S. (9 Wheat.) 532 (1824)), cert. denied, 315 U.S. 813 (1942).

> The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. ... [The first-filed rule], however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule.

Equal Employment Opportunity Commission v. University of Pennsylvania, 850 F.2d 969, 971-72 (3d Cir. 1988) (citations omitted), aff'd, 493 U.S. 182 (1990).

> Although exceptions to the rule are rare, courts have consistently recognized that the first-filed rule "is not a rigid or inflexible rule to be mechanically applied... ."  Bad faith, and forum shopping have always been regarded as proper bases for departing from the rule.  Similarly, courts have rejected the rule when the second-filed action had developed further than the initial suit ... .

> The letter and spirit of the first-filed rule, therefore, are grounded on equitable principles.  To be sure, the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments.  Yet, fundamental fairness dictates the need for "fashioning a flexible response to the issue of concurrent jurisdiction."

> In exercising his discretion, the trial judge [is]
> bound to acknowledge these principles.  "The term
> 'discretion' denotes the absence of a hard and fast
> rule."  Under this standard, a court must act "with
> regard to what is right and equitable under the
> circumstances and the law, and directed by the reason
> and conscience of the judge to a just result."  The
> decision to exercise jurisdiction in this context
> requires the trial judge to possess "the flexibility
> necessary to fit the decision to the individualized
> circumstances."

EEOC v. Univ. of Pennsylvania, 850 F.2d at 976-77 (citations

omitted).

Here, the two motions asserting the medical-care claim were

filed virtually contemporaneously, but no action has been taken

on the claim pending in the District of Columbia.  By contrast,

this Court promptly recognized the emergent nature of the

medical-care claim and ordered a preliminary response from the

Defendant.  It was proper to take such prompt action in this

matter, where the Plaintiff is a prisoner confined in this

District and the Defendant Warden Zickefoose also is located in

this District and has direct knowledge of and responsibility for

Plaintiff's medical care.  Similarly, the medical professionals

involved in Plaintiff's medical care are located in this

District.  By promptly ordering a response to the Complaint, this

Court has been able to collect the records reflecting, as

discussed below, that the claim is unexhausted.  Plaintiff cannot

complain, having brought this action in both jurisdictions, that

this Court has acted timely to make him aware of his obligation

to exhaust his administrative remedies before presenting his medical-care claims to a federal court.

In addition, the defendant here has responded quickly to collect the relevant medical records and to respond to the medical-care claim.  This defendant similarly is entitled to a prompt resolution of the matter.

Moreover, in light of the procedural posture of the action pending in the District of Columbia, where the action had previously been transferred to the Southern District of New York, Plaintiff filed an appeal, and the transferee Southern District of New York placed its matter on the suspense docket, it does not appear to be in either party's interest to permit the claim to remain unresolved pending resolution of the procedural issues there.  Nor does it appear that venue would be proper in either the District of Columbia or the Southern District of New York, when Plaintiff is confined in this District and the challenged medical care took place here.

Finally, the virtually simultaneous filings in two federal courts, naming different officials of the same federal agency, lead the Court to conclude that Plaintiff is attempting to forum shop, in the hopes that the nominally different defendants will not learn of the parallel filings and that at least one court will provide him with a favorable ruling.  The Court considers Plaintiff's tactics to be among the precise evils the exceptions

to the "first-filed" rule seek to thwart.  Under such circumstances, this Court will decline to abstain from exercising its jurisdiction.

In any event, the Complaint is dismissible on other grounds, as discussed more fully below.

B.    Exhaustion of Administrative Remedies

No action may be brought by a prisoner with respect to prison conditions unless the prisoner has exhausted available administrative remedies.  42 U.S.C. § 1997e(a).  Specifically, 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"[T]he ... exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002) (citation omitted).

In addition, a prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process.  Booth v. Churner, 532 U.S. 731 (2001).

Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; instead, failure to

exhaust is an affirmative defense that must be pled by the defendant.  Jones v. Bock, 549 U.S. 199 (2007).  Nevertheless, a district court has inherent power to dismiss a complaint which facially violates this bar to suit.  See, e.g., Bock, 549 U.S. at 214-15 (referring to the affirmative defense of a statute of limitations bar); Lindsay v. Williamson, 271 Fed.Appx. 158, 159-160, 2008 WL 902984, *1 (3d Cir. 2008); Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000).

The Bureau of Prisons Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[5]  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An

---

[5] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).

inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.[6] <u>Id.</u> Appeal to the General Counsel is the final administrative appeal. <u>Id.</u> If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

In her Response, the Defendant submitted an affidavit from Tara Moran, a BOP Paralegal, detailing her search of BOP records and attesting to Plaintiff's failure to file any administrative remedies with respect to his medical care. Plaintiff has not presented any information or argument to dispute this evidence of his failure to exhaust administrative remedies. Defendant urges this Court to dismiss the claim for medical care based upon Plaintiff's failure to exhaust administrative remedies.

Here, administrative remedies clearly were available to Plaintiff to challenge his medical care. Plaintiff has not availed himself of those remedies. Section 1997e(a) prohibits Plaintiff from bringing this claim to federal court without

---

[6] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

exhausting his administrative remedies.  Accordingly, this action will be dismissed without prejudice for failure to exhaust administrative remedies, and the motions for emergency relief will be denied.

Because of Plaintiff's failure to exhaust his medical-care claim, this Court will make no finding as to the adequacy of Plaintiff's care while confined.  The Court notes, however, that the evidence presently before the Court fails to establish any Eighth Amendment violation that would entitle Plaintiff to relief in this Court.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt

12

to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s

13

... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted).

Here, no inference of "deliberate indifference" arises from the evidence presently before the Court, which evidence Plaintiff does not dispute. Contrary to Plaintiff's allegation that his infection is not being treated, prison officials have repeatedly examined Plaintiff to address his complaints. The Court has reviewed Plaintiff's medical records and notes there is no evidence that Plaintiff actually has an infection. Unable to reconcile Plaintiff's adamant complaints with the total absence of any objective medical evidence, prison officials ultimately referred Plaintiff for a psychiatric evaluation.

Prison officials appear to have responded timely and appropriately to Plaintiff's various medical complaints. Moreover, even if the diagnosis and/or treatment were later found to be incorrect, that would not establish an Eighth Amendment violation entitling Plaintiff to relief. At most, what would be established would be a state-law claim for medical malpractice. In the absence of a federal claim, a state law claim for medical

malpractice could not be pursued in this Court.[7]  This Court emphasizes, however, that it makes no finding at this time as to whether Plaintiff has adequately pleaded or proved a state law claim for medical malpractice.[8]

C.    Vexatious Litigation

Plaintiff is well known to this Court.  See, Armstrong v. Grondolsky, Civil No. 08-0569, 2008 WL 442111 (D.N.J. Feb. 14, 2008), reconsideration denied, 2008 WL 7826045 (D.N.J. June 12, 2008), aff'd, 341 Fed.Appx. 828, 2009 WL 2400250 (3d Cir. Aug. 6, 2009).

By way of background, Plaintiff's prior litigation in this Court arose out of two related matters, Plaintiff's confinement

---

[7] Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim.  The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  Here, this Court has determined that all federal claims must be dismissed.  To the extent Plaintiff's pleadings could be construed to assert a state-law claim, there are no extraordinary circumstances that would permit this Court to exercise jurisdiction over such state-law claims.

[8] Defendant recently moved [13] for summary judgment on Plaintiff's claims.  That motion will be denied as moot.

as a civil contemnor, in a civil securities fraud action,[9] and
his criminal prosecution for securities fraud and related
offenses,[10] the histories of which are set forth in the opinion
of the U.S. Court of Appeals for the Second Circuit in Armstrong
v. Guccione, 470 F.3d 89 (2d Cir. 2006), cert. denied, 552 U.S.
989 (2007).

In Armstrong v. Guccione, decided November 27, 2006, the
Second Circuit affirmed the District Court's denial of
Plaintiff's application for habeas relief, challenging his
confinement as a civil contemnor.  In brief, the District Court
had found Plaintiff in contempt, and ordered him confined, for
his failure to disgorge certain records and assets in the civil
proceedings brought by the Securities and Exchange Commission and
the Commodity Futures Trading Commission.  Plaintiff
unsuccessfully challenged his confinement on the following
grounds: (1) his confinement contravened his Fifth Amendment
right against compelled self-incrimination; (2) his continued

---

[9] Plaintiff was confined as a civil contemnor in civil
proceedings against Plaintiff and others by the Securities and
Exchange Commission and the Commodity Futures Trading Commission
pending in the U.S. District Court for the Southern District of
New York.  See SEC v. Princeton Econ. Int'l, Ltd., Civil Action
No. 99-9667 (S.D.N.Y.); CFTC v. Princeton Global Mgmt., Ltd.,
Civil Action No. 99-9669 (S.D.N.Y.).  The civil contempt order
was vacated on April 27, 2007, following his conviction in the
criminal proceeding, and Plaintiff began serving his criminal
sentence on that date.  The civil actions remain pending.

[10] See United States v. Armstrong, Criminal Action No. 99-
0997 (S.D.N.Y.).

detention violated (a) the Non-Detention Act, 18 U.S.C. § 4001(a) and (b), (b) the Recalcitrant Witness Statute, 28 U.S.C. § 1826, and (c) the Due Process Clause of the Fifth Amendment; and (3) the District Court abused its discretion by denying him bail pending the resolution of his habeas petition.

In addition, while Plaintiff was confined as a civil contemnor, he filed a civil rights action for damages that was dismissed pursuant to 28 U.S.C. § 1915(e)(2). Armstrong v. United States, Civil No. 03-4801 (S.D.N.Y.).

Thereafter, Plaintiff pleaded guilty to one count of the indictment against him, for conspiracy to defraud the United States. On April 10, 2007, he was sentenced to a term of imprisonment of 60 months, to commence upon resolution of the civil contempt matter. See United States v. Armstrong, 99-cr-0997 (S.D.N.Y.) (Docket Entry No. 150).

Prior to his sentencing, while Plaintiff was confined at the Metropolitan Correctional Center in New York pursuant to the civil contempt order, he filed in the U.S. District Court for the Southern District of New York a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, seeking a declaratory judgment with injunctive relief against the failure to credit against his criminal sentence time spent in jail as a civil contemnor. See Armstrong v. Lappin, Civil Action No. 07-2573 (S.D.N.Y.). The District Court dismissed the petition, and the

17

Court of Appeals for the Second Circuit dismissed the appeal on August 28, 2007.  The records available to this Court at present do not reveal the grounds for the dismissals.[11]

Plaintiff's first petition in this Court, Armstrong v. Grondolsky, Civil No. 08-0569 (D.N.J.), followed.  Plaintiff was then, as now, confined at the Federal Correctional Institution at Fort Dix, New Jersey, pursuant to the criminal sentence.  In a rambling petition of 98 pages, accompanied by various memoranda of law, Plaintiff purported to assert nine claims: (1) that he was entitled to credit against his criminal sentence for the time spent confined as a civil contemnor; (2) that Regional Director Scott Dodrill violated Plaintiff's rights under 42 U.S.C. § 1985 and 1986 by permitting his wrongful confinement as a civil contemnor and that Warden Jeff Grondolsky "joined" the conspiracy and continued to confine Plaintiff without statutory authority; (3) petitioning for a writ of mandamus pursuant to 28 U.S.C.

_____

[11] Records available to this Court suggest that Plaintiff has unsuccessfully challenged the denial of credit, as against his criminal sentence, for the time spent in civil contempt in several actions, including, at least, Armstrong v. Lappin, Civil No. 06-2221 (D.D.C.) (transferred to U.S. District Court for the Southern District of New York); Armstrong v. Lappin, Civil No. 07-2573 (S.D.N.Y.); Armstrong v. Doe, Civil No. 07-8116 (S.D.N.Y.); Armstrong v. United States, Civil No. 08-10946 (S.D.N.Y.).  The grounds for dismissal of these several actions are not readily apparent from the records available.  Some of the dismissals have been appealed.  In addition, as previously noted, this claim may be pending in Armstrong v. Lappin, Civil No. 09-7370 (S.D.N.Y.) (presently on the suspense docket pending resolution of certain appeals).

§ 1361 to compel the respondents to credit against his criminal
sentence the time spent confined as a civil contemnor; (4) for a
permanent injunction against any further imprisonment as a civil
contemnor, which Plaintiff contended violates a pre-existing bail
order in the criminal case; (5) a claim under Bivens v. Six
Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S.
388, 389 (1971), and a habeas action under 28 U.S.C. § 2241, for
the confinement of Plaintiff as a civil contemnor, in the
Metropolitan Correctional Center between January 14, 2000, and
April 10, 2007, allegedly in violation of the Eighth Amendment
and the Non-Detention Act, 18 U.S.C. § 4001(a); (6) a habeas
claim under § 2241, and a damages claim under Bivens, for cruel
and unusual punishment in violation of the Eighth Amendment based
upon Respondents' alleged failure to credit against Plaintiff's
criminal sentence the time spent confined as a civil contemnor;
(7) a habeas claim under § 2241, a civil rights action pursuant
to 42 U.S.C. §§ 1985 and 1986, and a Bivens claim, challenging
his confinement under the civil contempt order, alleging a denial
of equal protection as a class of one; (8) a habeas claim, a
claim pursuant to 42 U.S.C. §§ 1985 and 1986, and a Bivens claim
based upon alleged violation of the Torture Victim Protection Act
arising out of his confinement as a civil contemnor; and (9) for
money damages based upon an alleged assault on or about May 10,
2007, while he was confined at the Metropolitan Correctional

19

Center in New York, and subsequent failures to provide medical attention.  In addition, Plaintiff purported to assert a reservation of rights to amend the petition to assert additional claims.[12]

In that first action in this Court, Plaintiff also filed several motions, including (1) a Motion for Immediate Change in Custody to Home Confinement, (Docket Entry No. 2); (2) a Motion for Injunctive Relief, requesting that this Court re-open a prior bail proceeding, United States v. Armstrong, 99-mj-5018 (D.N.J.), (Docket Entry No. 3); (3) a Motion for Protective Order, to prohibit any transfer or change in his living conditions during the pendency of this Petition, (Docket Entry No. 4); (4) a Motion to Stay Execution of the criminal sentence, or in the alternative to grant bail, pending conclusion of this proceeding (Docket Entry No. 5); and (5) a Motion to Compel the Bureau of Prisons to allow Armstrong to be temporarily released for the day to attend any hearing that may be ordered by this Court (Docket Entry No. 6).  As set forth more specifically in this Court's earlier opinions, none of these claims was sufficient to proceed on the merits.  The claim for credit for time spent in civil contempt

---

[12] The purported "reservation of rights" to amend the Petition was without effect.  Rule 15 of the Federal Rules of Civil Procedure governs amendment of civil pleadings, including habeas petitions.

was dismissed without prejudice for failure to exhaust administrative remedies.

That dismissed claim reappeared here in the form of a new Petition for writ of habeas corpus, <u>Armstrong v. Zickefoose</u>, Civil Action No. 09-6378 (D.N.J.), from which this claim for medical care was severed.  The new habeas action remains pending. As explained above, the medical-care claim presented here was also asserted in <u>Armstrong v. Lappin</u>, Civil No. 09-0972, in the U.S. District Court for the District of Columbia, requiring this Court to undertake an exhaustive evaluation of Plaintiff's pending litigation in several federal courts and of the propriety of this Court deciding this matter.  Moreover, it appears that Plaintiff asserted, both in the District of Columbia and here, in Civil No. 09-6378, the claim that he is entitled to credit, as against his criminal sentence, for the time spent confined as a civil contemnor.

The Court of Appeals for the Third Circuit has noted that "[a]ccess to the courts is a fundamental tenet of our judicial system; legitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be." <u>In re Oliver</u>, 682 F.2d 443, 446 (3d Cir. 1982) (citations omitted).

This Court shares the Court of Appeals' respect for, and devotion to, the constitutional right of access to the courts.

Nevertheless, as noted by the Court of Appeals in the same decision,

> It is well within the broad scope of the All Writs Act for a district court to issue an order restricting the filing of meritless cases by a litigant whose manifold complaints raise claims identical or similar to those that already have been adjudicated.  The interests of repose, finality of judgments, protection of defendants from unwarranted harassment, and concern for maintaining order in the court's dockets have been deemed sufficient by a number of courts to warrant such a prohibition against relitigation of claims.  In appropriate circumstances, courts have gone beyond prohibitions against relitigation and enjoined persons from filing any further claims of any sort without the permission of the court.

Id. at 445 (citations omitted).[13]

In light of Plaintiff's history of filing similar or identical lawsuits in multiple jurisdictions, and the consequent effect on the administration of justice, this Court finds that it is in the interest of justice to require Plaintiff, in any future submissions to this Court, including submissions in pending cases as well as complaints or petitions opening new actions, to certify, under penalty of perjury, (1) that the claims asserted therein are not the subject of prior or pending litigation in

---

[13] The All Writs Act, referenced by the Court of Appeals, provides, in pertinent part, that:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a).

this or any other state or federal court, and (2) providing the
name, docket number, and jurisdiction, of <u>all</u> civil actions
previously filed by Plaintiff, in any state or federal court,
regardless of the claims asserted in such matters.

This Court cautions Plaintiff that any failure to comply
with this certification requirement will be viewed by the Court
as a serious violation, indeed, as a fraud upon the Court.  This
Court will not hesitate to employ all the tools at its disposal
to enforce this certification requirement and to impose
appropriate sanctions.

By way of example, Rule 11 of the Federal Rules of Civil
Procedure provides that, by presenting any paper to the Court, an
unrepresented party

> certifies that to the best of the person's knowledge,
> information, and belief, formed after an inquiry
> reasonable under the circumstances,
>
> (1)   it is not being presented for any improper
>       purpose, such as to harass, cause unnecessary
>       delay, or needlessly increase the cost of
>       litigation;
>
> (2)   the claims, defenses, and other legal contentions
>       are warranted by existing law or by a nonfrivolous
>       argument for extending, modifying, or reversing
>       existing law or for establishing new law; ...

Fed.R.Civ.P. 11(b).  On its own, if a court believes a party has
violated Rule 11(b), a court may order a party to show cause why
its conduct has not violated Rule 11(b) and may, if it finds a
violation, impose a sanction sufficient to deter repetition of

the conduct, including monetary or nonmonetary sanctions.  A court may impose a monetary sanction, for a misrepresentation regarding prior litigation, against a party that has been granted leave to proceed in forma pauperis.  Warren v. Guelker, 29 F.3d 1386 (9th Cir. 1994).

In addition, under certain circumstances, a federal court may dismiss a "malicious" civil action.  See, e.g., 28 U.S.C. § 1915(e) (cases filed by persons who have been granted leave to proceed in forma pauperis); 28 U.S.C. § 1915A(b) (cases in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

A complaint is "malicious" when it contains allegations which the plaintiff knows to be false, it is a part of a longstanding pattern of abusive and repetitious lawsuits, or it contains disrespectful or abusive language.  See, e.g., In re Tyler, 839 F.2d 1290, 1293 (8th Cir. 1988); Crisafi v. Holland, 655 F.2d 1305, 1309 (D.C. Cir. 1981); Phillips v. Carey, 638 F.2d 207 (10th Cir. 1981), cert. denied, 450 U.S. 985 (1981).  Thus, a complaint is malicious under the referenced statutes if it is repetitive or evidences an intent to vex the defendants or abuse the judicial process by relitigating claims decided in prior cases.

24

Moreover, it is well established that a court may dismiss a complaint as "malicious" if it seeks to relitigate a previously-litigated claim or if the complaint contains misrepresentations about the plaintiff's other litigation.  See, e.g., Nelson v. Paine Webber Corp., Civil No. 09-315, 2010 WL 1028724 (N.D. Fla. March 18, 2010); Hall v. Rahangdale, Civil No. 09-283, 2009 WL 3028219 (N.D. Fla. Sept. 15, 2009); Marshall v. Florida Dept. of Corrections, Civil No. 08-417, 2009 WL 2351723 (N.D. Fla. July 29, 2009); Williams v. Baxter, Civil No. 08-93, 2008 WL 3049995 (N.D. Fla. July 30, 2008); Starks v. Tanner, Civil No. 06-699, 2006 WL 3210147 (S.D. Ill. 2006); Marshall v. City of Mesquite, Civil No. 03-1508, 2003 WL 21673655 (N.D. Texas 2003)(Report and Recommendation adopted and case dismissed as malicious); Pittman v. Moore, 980 F.2d 994 (5th Cir. 1993) Wilson v. Lynaugh, 878 F.2d 846 (5th Cir.), cert. denied, 493 U.S. 969 (1989).

Dismissal of a complaint as "malicious" counts as a "strike" under 28 U.S.C. § 1915(g); the accumulation of three such "strikes" may prevent a prisoner from proceeding in forma pauperis in the future.  Similarly, a federal court has discretionary authority to deny in forma pauperis status based on a prisoner's history of abuse of the privilege, even in the absence of the accumulation of three "strikes."  See, e.g., In re McDonald, 489 U.S. 180 (1989); Mitchell v. Federal Bureau of Prisons, 587 F.3d 415 (D.C. Cir. 2009).

25

Finally, under certain circumstances, this Court may order the revocation of good-time credits.

> In any civil action brought by an adult convicted of a crime and confined in a Federal correctional facility, the court may order the revocation of such earned good time credit under section 3624(b) of title 18, United States Code, that has not yet vested, if, on its own motion or the motion of any party, the court finds that –
>
> (1)  the claim was filed for a malicious purpose;
>
> (2)  the claim was filed solely to harass the party against which it was filed; or
>
> (3)  the claimant testifies falsely or otherwise knowingly presents false evidence or information to the court.

28 U.S.C. § 1932 ("second").[14]

Misrepresentations regarding prior litigation are grounds for revocation of good-time credits.  See Rice v. National Security Council, 244 F.Supp.2d 594 (D.S.C. 2001), aff'd sub nom, Rice v. Mills, 46 Fed.Appx. 212 (4th Cir. 2002); cert. denied, 538 U.S. 951 (2003); Feurtado v. McNair, Civil No. 99-2582, 2000 WL 34448882 (D.S.C. July 20, 2000), aff'd, 3 Fed.Appx. 113 (4th Cir. 2001), cert. denied, 534 U.S. 964 (2001).  For the foregoing reasons, an appropriate order will be entered pursuant to the All Writs Act.

---

[14] There are two sections of the United States Code denominated 28 U.S.C. § 1932.  It is the second such provision that is applicable here.

III.   <u>CONCLUSION</u>

For the reasons set forth above, the Complaint will be dismissed without prejudice and all pending motions will be denied as moot.

Plaintiff cannot correct the deficiencies in his pleading at this time.  Accordingly, Plaintiff will not be granted leave to file an amended complaint.

An appropriate order follows.[15]


<u>s/Renée Marie Bumb</u>
Renée Marie Bumb
United States District Judge

Dated: <u>November 17, 2010</u>

---

[15] In addition, Plaintiff previously was ordered to submit the $350 filing fee or an application for leave to proceed <u>in forma</u> <u>pauperis</u> if he wished to proceed with this claim. Plaintiff has failed to comply with this directive.  This failure to comply with the filing fee requirement provides another ground for dismissal of this action without prejudice.